Minute Order Form (0097)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1719 | **DATE** | 5/30/2000 |
| **CASE TITLE** | FRANK J. WSOL, SR., et al. vs. FIDUCIARY MANAGEMENT ASSOCIATES, INC., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiffs' motion for new trial [71-1] or relief from judgment [71-2] is denied. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUN 01 2000 | |
| | Docketing to mail notices. | date docketed | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| jad | courtroom deputy's initials | 00 MAY 31 PM 4:48 | 5/30/2000 date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FRANK J. WSOL, SR., et al.          )
                                     )
                    Plaintiffs       )     No. 99 C 1719
                                     )
        v.                           )     Suzanne B. Conlon, Judge
                                     )
FIDUCIARY MANAGEMENT ASSOCIATES,     )
INC., and EAST WEST INSTITUTIONAL    )
SERVICES, INC.,                      )
                    Defendants.      )

DOCKETED
JUN 1 - 2000

**MEMORANDUM OPINION AND ORDER**

Judgment was entered for defendants Fiduciary Management Associates, Inc. ("FMA") and East West Institutional Services, Inc. ("East West") in this bench trial after the close of plaintiffs' case.[1] Plaintiffs, who are the present trustees of the International Brotherhood of Teamsters Union Local 710 Pension Fund, move for a new trial or relief from judgment on the grounds that (1) the court's failure to give "proper" weight to deposition testimony and admit related exhibits constitute denial of a fair trial; and (2) denial of a second extension of discovery and leave to file an amended complaint constitute denial of due process. Plaintiffs supplement their motion based on recent criminal indictments of non-parties who were also involved in the underlying investment transactions on behalf of the pension fund. From the indictments,

---

[1] East West failed to appear for trial. Plaintiffs declined to move for default judgment, but rather submitted its case on the merits against both defendants.

plaintiffs presume the existence of unspecified evidence they speculate could have developed with more discovery time.

**I. DEPOSITION TESTIMONY**

On March 24, 1999, a week after this case was filed, the court sent plaintiffs' counsel its standing order, which included the following with respect to use of deposition testimony at trial:

> Deposition testimony shall be presented by reading a written summary that excludes all colloquy and irrelevant matters. Unless otherwise ordered, counsel are to exchange written deposition summaries at least two weeks before trial. **Counsel are then to meet and work out any language problems before trial.** Evidentiary objections are to be noted by bracketing the objected to material and by a marginal notation briefly stating the basis of the objection (e.g., speculation, cumulative, irrelevant, Fed.R.Evid. 403, etc.). [Emphasis in original].

<u>PROCEDURES TO BE FOLLOWED IN CASES ASSIGNED TO JUDGE SUZANNE B. CONLON</u>, pp. 5-6.[2]

The joint final pretrial order was presented in open court during a routine status and motion call. The court specifically inquired whether deposition summaries had been prepared; counsel for plaintiffs responded, "Yes, they are at the end of the designations." Tr. 1/6/00 at 4. An attorney for FMA added, "They're skeletal summaries." <u>Id</u>. A three-ring binder containing the voluminous pretrial order was handed up to the court during a discussion of various matters pertaining to the trial and pretrial

---

[2] The standing order is also available on the court's website: www.ilnd.uscourts.gov.

motions. Id. at 1-11. The court did not review the pretrial order in open court, but relied upon counsel's representations that deposition summaries were provided. Nevertheless, plaintiffs now contend that because the court acknowledged counsels' representations that deposition summaries were prepared by saying, "Oh, I see." id at 4, the court tacitly approved "skeletal" summaries, and then "repudiated its prior acceptance" on the first day of trial a week later. Pl. corrected memo at 2-3. This is simply not an accurate or fair characterization of the record.

The court did not have an opportunity to review the voluminous pretrial order in open court during its busy status and motion call. When the court reviewed the pretrial order just before trial, it could not find deposition summaries. Rather, the pretrial order listed 12 deponents with one or two sentences describing the general subject(s) of each deponent's testimony, followed by countless pages of designations and objections.[3] During the opening statement of plaintiffs' lead counsel, the court again inquired whether deposition summaries were prepared. Tr. 1/14/00 at 14. Counsel responded that the parties were only able to agree on one or two sentence summaries. Id. The court explained that the pretrial order submissions were inadequate "characterizations," not testimonial summaries. Id. Plaintiffs' counsel assured the court

---

[3] For example, the one-sentence entries as to deponents Laura DeBruyne and David Muncie are identical, non-revealing statements that each testified "about the operations of Defendant East West." Pretrial Order, Ex. G.

3

he would provide "digests" of the depositions. Id. At the end of the first trial day, before a three-day recess, the court again inquired regarding the depositions and described the standing order requirements in detail. Id. at 221. The court suggested counsel for the parties work together on the summaries over the three-day trial recess. Id. at 223. In response to plaintiffs' varied excuses for not complying with the standing order, the court noted that counsels' purported attempt to obtain pretrial "guidance" in preparing deposition summaries from a courtroom deputy clerk employed by the clerk's office was inappropriate. Id.

When trial resumed three days later, plaintiffs failed to submit any deposition summaries. Plaintiffs' counsel informed the court that deposition summaries were being prepared and sent to defense counsel "over the last couple of days." Tr. 1/18/00 at 228. The court requested that deposition summaries be submitted as soon as each was completed. Id. Nevertheless, the following day no deposition summaries were submitted. The court warned plaintiffs' counsel that as the proponent of deposition testimony, it was plaintiffs' responsibility to either present the summaries in their case or to just rely on the one or two sentence general descriptions in the pretrial order. Tr. 1/19/00 at 611. Obviously, the "skeletal summaries" would have no probative value whatsoever.

On the fourth day of trial, no deposition summaries were submitted to the court. Yet counsel for plaintiffs referred to unsubmitted deposition testimony in arguing the admissibility of

4

other evidence. Tr. 1/20/00 at 766. The court pointed out that the cited deposition testimony had not been submitted to the court, "[a]nd, again if it was important evidence, you should have prepared summaries . . ." Id. In addition, the court pointed out that plaintiffs had not rested yet, and if they had more evidence, they should present it. Id. at 767. Nevertheless, plaintiffs decided to rest their case later that day. Id. at 812. Plaintiffs failed to submit a single deposition summary before they rested their case. Instead, plaintiffs' counsel merely proffered boxes of deposition transcripts, which the court declined to accept. The court gave counsel a final warning that the "sun would set" on his opportunity to submit summaries the following day at noon when arguments would be heard on a defense motion for entry of judgment. Id. at 814.

Just before arguments on the defense motion, plaintiffs informally sent to chambers *via* the court reporter three deposition summaries with defense objections and counter-designations and eight other summaries without any defense objections or counter-designations. These summaries were neither filed with the court nor tendered on the record. The court delayed its ruling after arguments on the defense motion so that it could review the tardy submissions. In later ruling on the motion, the court noted it considered the three deposition summaries and related exhibits that plaintiffs submitted to the defense even though the summaries failed to conform with the standing order; the court stated that it had

read but could not give significant weight to the remaining incomplete summaries because they did not incorporate defense counter-designations or objections. Tr. 1/25/00 at 929-32. The court explained that it could not determine whether plaintiffs' unilateral summaries were "a fair and complete contextual representation of the [deposition] testimony." Id. at 932.

Plaintiffs base their present motion on Rules 59(a) and 60(b)(4) of the Federal Rules of Civil Procedure. However, plaintiffs did not present, much less preserve, a deposition summary issue at trial. Plaintiffs neither contested the legitimacy of the court's standing order requirements nor did they claim before judgment that they had an inadequate opportunity to comply with the order. Instead, plaintiffs, who were represented by *five* experienced counsel,[4] asserted at trial that they were initially "confused" about the deposition summary requirement in the standing order, that they sought *ex parte* advice from court personnel,[5] and that defense counsel were uncooperative. But it is clear from the record that plaintiffs never prepared *any* deposition summaries before trial, nor did they tender summaries to defendants two weeks

---

[4]In all, seven attorneys filed appearances on plaintiffs' behalf. R. 1.

[5] See United States v. Kraus, 137 F.3d 447 (7th Cir. 1998)(discussing impropriety of seeking advisory opinion from court employee about judge's likely reaction to attorney's proposal). At the direction of the Seventh Circuit, the Kraus opinion was circulated to all court staff.

before trial, as explicitly required by the standing order. Although plaintiffs now attempt to place partial blame for their non-compliance on a courtroom deputy employed by the Clerk's Office, the purported opinion of a clerical employee that contradicted the clear terms of the standing order was not a reasonable basis for reliance. See Pl. corrected memo, Ex. 4, Angelucci Aff. ¶ 7. In any case, the court admonished counsel the first day of trial for seeking advice from a clerical employee. The court then described in detail the deposition summary requirements and suggested summaries be prepared during the ensuing three-day trial recess. Plaintiffs fail to explain why they did not submit any summaries whatsoever until after they rested their case a week later. Nor do they explain why all but three tardy summaries - which the court fully considered - failed to include any defense objections and counter-designations. While the court read all the untimely submissions, it could not place significant weight on the unilateral summaries. To do so would be equivalent to considering only a live witness' direct testimony without permitting opposing counsel to object or cross-examine the witness. Obviously, the reliability and probative value of testimony cannot be fairly tested under such a partisan approach.

FMA has analyzed the deposition summaries that were not given "significant weight" by the court to show that in substance the testimony was either cumulative or irrelevant to the issues before

7

the court. FMA resp. at 12-14. As plaintiffs recognize, a new trial should only be granted "where substantial justice has not been done, resulting in harm to the movant." Pl. reply at 7, quoting Romero v. Cincinnati Inc., 171 F.3d 1091, 1096 (7th Cir. 1999). Nonetheless, plaintiffs respond to FMA's factual analysis with sweeping conclusions and accusations lacking a rational connection with the court's Rule 52(a) findings. Plaintiffs fail to address how the court's refusal to give significant weight to incomplete, partisan summaries affected any specific court finding and thereby deprived plaintiffs of a fair trial. Accordingly, plaintiffs have not met their heavy burden under either Rule 59(a) or 60(b)(4) for establishing the right to a new trial or relief from judgment.

## II. DISCOVERY DEADLINES

Plaintiffs argue that a ten-month discovery period was a denial of their right to "due process" because this case involved multimillion dollar ERISA claims of fiduciary breach and breach of contract arising from defendants' handling of Teamster pension fund investments. Pl. corrected memo at 11. The discovery schedule was set at the initial status hearing on April 14, 1999. Before setting the schedule, the court inquired about the parties' discovery needs, including the number of depositions anticipated. Tr. 4/14/99 at 2-3. Both plaintiffs and FMA estimated ten to twelve depositions; in addition, plaintiffs stated there may be a need for forensic accountants and economic experts with respect to damage issues. Id,

at 3-4. The court set a 180-day discovery period, with discovery to close on October 14, 1999. Id. at 5. Neither plaintiffs nor FMA objected to the explicitly firm discovery schedule. Id. When a month later FMA filed its second agreed motion for a brief extension of time to respond to the complaint, the court granted the motion with the condition that "[a]ll previously set dates stand." See Min. Order of 5/11/99.

Three months later, plaintiffs and FMA filed a joint motion to amend the scheduling order. As a result, the court extended the deadline for completion of discovery to November 15, 1999, with the condition that this was the final extension. See Min. Order of 8/18/99. Apparently not a single deposition was taken until September 1999, five months after the original scheduling order was entered. During a hearing in October 1999 on FMA's motion to compel responses to discovery requests served four months earlier, the court noted FMA's lack of diligence in enforcing its discovery rights. Tr. 10/7/99 at 3. The only "responses" plaintiffs had furnished to interrogatories served four months earlier were "oral." Id.[6] Plaintiffs attributed the lack of discovery activity to settlement negotiations and a desire to minimize attorneys' fees and costs. Id. This obvious lack of serious discovery activity

---

[6] Oral answers to interrogatories clearly do not comply with Fed.R.Civ.P. 33(b)(1) and (2), requiring answers to be made in writing, under oath, and signed by the person providing the answers.

9

prompted the court to warn that "[d]iscovery will not be extended again." Id at 5.

Even though discovery closed on November 15th, the parties agreed to continue taking depositions for two additional months; plaintiffs and FMA jointly moved to extend the filing of the final pretrial order from December 1999 to January 2000. R. 32. The court granted the motion as the "second final extension." R. 36. It appears from the record that most of the depositions in this case were taken either the month before the second discovery deadline (one month after the first discovery deadline) or during the two months following the close of discovery.[7]

It is beyond dispute that a substantial amount of discovery was taken. However, it is also clear that the hyperactivity at and after the close of discovery may be attributed in large measure to the acknowledged lack of activity "to keep attorneys' fees and costs down" for the first six months of the discovery period. Last-minute frenzy was a known risk both sides undertook by their strategic decisions. From the first status hearing, all counsel were on notice the discovery schedule was firm; the court reasonably assumed its scheduling would be honored. Spears v. City of Indianapolis, 74 F.3d 153, 157 (7th Cir. 1996). More importantly, plaintiffs fail to identify any potential witness they were denied an

---

[7] During the first seven months of the original eight months scheduled for discovery, plaintiffs took only one deposition; over the next three months, the parties took approximately 40 depositions. Pl. corrected mot., Ex. 2.

10

opportunity to depose because of the discovery schedule or to explain in a non-speculative way how the outcome of the trial would probably have been different had plaintiffs been permitted to set their own discovery schedule. Thus, plaintiffs fail to make a clear showing that they have suffered actual or substantial prejudice. Miksus v. Howard, 106 F.3d 754, 758 (7th Cir. 1997); Martel v. County of Los Angeles, 56 F.3d 993, 995 (7th Cir.), cert. den. 516 U.S. 944 (1995).

### III. AMENDMENT OF THE COMPLAINT

A month before the second discovery deadline, plaintiffs moved for leave to file an amended complaint adding claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and naming five new defendants. R. 13. In the same motion, plaintiffs requested that the extended discovery schedule be vacated. Id. In denying the motion, the court noted that the motion was vague as to when plaintiffs acquired the information supporting their claims against five new defendants and that adding new parties and broad new claims would materially delay the trial. Tr. 10/7/99 at 5. The court then inquired whether a trial delay would be prejudicial to other parties. Id. at 6. Counsel for FMA responded that the new allegations would "exponentially expand the scope of the case" and would shift the focus of the case to individuals and transactions that had not been the subject of discovery; FMA alleged that the amended complaint would incorporate allegations asserted by

plaintiffs in cases against other investment managers already pending before other judges. Id. at 6-7.[8] In short, the proposed amended complaint sketched a case far different in substance, scope and parties than the pending ERISA and breach of contract claims.

After an answer has been filed, a plaintiff may amend a complaint only with leave of court or with the written consent of the adverse party. Fed. R. Civ. P. 15(a). While Rule 15(a) requires that leave to amend a pleading be "freely given when justice so requires," appropriate considerations include undue prejudice to the opposing party and an undue delay in the proceedings. Feldman v. American Memorial Life Insurance Company, 196 F.3d 783, 792 (7th Cir. 1999), quoting Perrian v. O'Grady, 958 F.2d 192, 194 (7th Cir. 1992); Bohan v. City of East Chicago, Indiana, 799 F.2d 1180, 1183-84 (7th Cir. 1986).

Plaintiffs conclude they were denied "due process" by this ruling. However, plaintiffs fail to mention that two weeks later, they simply filed their proposed amended complaint as a new case. See Wsol, et al. v. Carr, et al., 99 C 6834 (Judge Guzman). Nor do they mention that this court denied FMA's motion to enjoin plaintiffs from prosecuting the new RICO case before another judge. R. 35. In short, plaintiffs have not been denied the opportunity

---

[8] E.g., Frank J. Wsol, et al. v. Fleet Investment Advisors, et al., 99 C 1541 (Judge Anderson); Frank J. Wsol, et al. v. Great Northern Management, et al., 99 C 2004 (Judge Bucklo); Frank J. Wsol, et al. v. Main Street Investment Advisors, Inc., et al., 99 C 2088 (Judge Hibbler).

to litigate their RICO claims against FMA and other parties before another judge of this court. Thus, the assertion of a "due process" denial is frivolous.

## IV. THE CRIMINAL INDICTMENTS

After plaintiffs' post-trial motions were fully briefed, they were granted leave to file a supplemental memorandum based on two recent indictments of non-parties to this action who were involved in the investment decisions in this case. None of the parties in this case are named as defendants or as unindicted co-conspirators in the criminal cases. The indictments allege the defendants engaged in a racketeering conspiracy, which included unlawful payments to influence operations of employee benefit plans, money laundering, witness tampering and extortion. Plaintiffs argue that the criminal racketeering allegations are "indicative of the existence of evidence of precisely the kind . . . that they should have had time to discover and then present to the [c]ourt." Pl. suppl. memo at 2.

An indictment does not have any evidentiary value; it is merely an unproven accusation. The fact that a grand jury has found probable cause to believe that non-parties engaged in various corrupt activities has only a speculative relationship with the transactions at issue in this case. Plaintiffs are precluded by law from discovery of grand jury information and internal investigatory files. See e.g., Fed. R. Crim. P. 6(e). The indictment itself

affords no new basis for discovery on the issues in this case. To the extent plaintiffs argue that they were denied the opportunity to pursue viable RICO claims in this case, their focus is misdirected. Plaintiffs' RICO claims have been pending before another judge of this court for seven months after discovery closed in this case. Thus, they have had the opportunity to investigate and test the sufficiency of their RICO claims. Plaintiffs have not established they have been prejudiced or denied substantial justice.

## CONCLUSION

Plaintiffs' motion for a new trial and relief from judgment is denied.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

May 30, 2000